ACCEPTED
03-14-00737-CV
4833576
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/9/2015 4:35:37 PM
JEFFREY D. KYLE
CLERK

## No. 03-14-00737-cv

_____

### IN THE THIRD COURT OF APPEALS
### AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/9/2015 4:35:37 PM
JEFFREY D. KYLE
Clerk

_____

### CHASE CARMEN HUNTER, APPELLANT/PLAINTIFF v. DAVID MATTAX[1] IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF INSURANCE, AND THE TEXAS DEPARTMENT OF INSURANCE, APPELLEES/DEFENDANTS

_____

### APPELLANT'S REPLY BRIEF WITHOUT ORAL ARGUMENT

_____

### From Cause D-1-GN-13001957 In The 250th District Travis County, Texas, The Honorable John K. Dietz Presiding

_____

**Chase Carmen Hunter, pro se**
**340 S. Lemon Ave. #9039**
**Walnut, CA 91789**
**Telephone: 707-706-3647**
**Facsimile: 703-997-5999**
**Chase_Hunter@yahoo.com**

---

[1] Texas Rule of Appellate Procedure 7.2(a): Substitution: Eleanor Kitzman was named as one intended initial "Defendant" but her term as Commissioner of Insurance ended on about May 30, 2013. Her successor was unknown. "John/Jane Doe in his/her official capacity as interim commissioner of insurance or commissioner of insurance" was added to the initial petition as a second intended "Defendant". Later, Julia Rathgeber was appointed to replace Eleanor Kitzman and "Julia Rathgeber" was added to this lawsuit in place of "John/Jane Doe". David Mattax recently replaced Julia Rathgeber in the official capacity as Commissioner of Insurance. Both "Eleanor Kitzman" and "Julia Rathgeber" have been replaced by "David Mattax".

**CERTIFICATION.**

I, Chase Carmen Hunter, state under penalty of perjury that the following facts and argument are true and correct.

_____    _____April 9, 2015_____

**STATEMENT OF THE CASE.**

1. This petition for appeal ("Appeal") addresses very simple issues.

2. In June 2013, Hunter filed an Original Verified Motion To Proceed In Forma Pauperis ("Motion IFP") in the Travis County Texas District Court ("TCTDC") along with her Original Verified Petition for Declaratory Judgment ("Pet DJ").

3. Pursuant to Texas Rule of Civil Procedure ("TRCP") 145a, The Clerk of the TCTDC was required to issue citations upon receipt of Hunter's Motion IFP. But she did not.

4. Subsequently, Hunter filed a Motion to Reinstate ("MTR"). The TCTDC was required to hold a hearing pursuant to TRCP 165a(3) and did not.

-2-

5. This is reversible error because the outcome would be very different if the TCTDC had complied with TRCP 165a(3): a hearing on the MTR would establish that the record proves that Hunter made many, many attempts to get the TCTDC Clerk to perform required ministerial duties and to get the TCTDC to perform required ministerial duties. No reasonable person could agree that Hunter's lawsuit was correctly dismissed for "want of prosecution" under the circumstances when the TCTDC Clerk and the TCTDC abandoned many significant TRCP's (and abandoned, inter alia, the United States Constitution Due Process Clause) and blocked Hunter's lawsuit from moving forward.

6. Texas Rule of Appellate Procedure ("TRAP") 44.1(a) states that "[n]o judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the

case to the court of appeals." The record shows that both TRAP 44.1(a)(1) and (2) apply to this appeal.

7. The Appellee Brief ("Appee Brief") defends the dismissal order (i.e. August Order) using the only defense the Appellees could have asserted if they had filed a response to Hunter's MTR in the TCTDC and if they had appeared at a hearing pursuant to TRCP 165a(3).

8. When Hunter filed her MTR in the TCTDC in September 2014, Hunter served her MTR upon the Appellees and Cynthia Morales, their legal counsel. The Appellees were permitted by TRCP to file a response to Hunter's MTR and were permitted to schedule a hearing on the MTR. But they did not.

9. They therefore waived their right to assert any defense of Hunter's MTR for the first time in this appellate record.

10. Please, take judicial notice of the underlying record because it shows that the Appellees did not participate in the lawsuit in the TCTDC. However, please, take judicial notice of Texas Third Court of

-4-

Appeals ("TTCA") case 03-13-00468-CV which shows that the Appellees participated in that case which arose from this TCTDC case. They filed a response in TTCA case 03-13-00468-CV on about September 20, 2013. Therefore, the Appellees had actual knowledge of this TCTDC case since July 2013, when Hunter filed TTCA case 03-13-00468-CV. The Appelees refused to defend this lawsuit it in the TCTDC.

11. The Appellees cannot use the Appee Brief to make a record for the first time of how they would have defended the MTR in the TCTDC if they had defended the MTR in the TCTDC.

12. Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. See Palladian, 165 S.W.3d at 434; see also Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex.2003); Sun Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex.1987).

**NO STANDING AND WAIVER TO DEFEND THE TCTDC CLERK**

13. Further, the Appee Brief defends the TCTDC Clerk's actions and inactions, and the Appellees have no

-5-

standing or right to do so. The Appellees are a governor appointee and a state agency and are represented by the Texas Attorney General. The TCTDC Clerk is a publicly-elected official. Please, take judicial notice. The Texas Constitution does not establish the Texas Attorney General as the legal counsel to publicly-elected officials. <u>See</u> Texas Constitution Article 4, Section 22.

14. Also, the record in TTCA case 03-13-00468-CV shows that the clerk of this court sent a letter dated September 6, 2013, to the TCTDC Clerk requesting that the "District Clerk's Office" file a response to Hunter's petition for a writ of mandamus. <u>See</u> Exhibit A. The "District Clerk's Office" did not file a response. Please, take judicial notice. Therefore, the TCTDC Clerk's Office knowingly defaulted on Hunter's petition for a writ of mandamus and therefore admitted that the TCTDC Clerk violated, among other things, TRCP 145a, and admitted that Hunter did not agree by telephone to pay the TCTDC Clerk's filing fee.

15. Even if the Appellees had a right to defend the TCTDC Clerk's action and inaction as described in this record, the Appellees waived their right, if any, to defend the TCTDC Clerk.  If the Appellees wanted to assert any right to defend the TCTDC Clerk, they were required to do so in September 2013, in TTCA case 03-13-00468-CV. But they did not. See ¶ 12 above for citation on "waiver".

**NOTWITHSTANDING THE FACT THAT THE UNDERLYING RECORD AND TTCA CASE 03-13-00468-CV ESTABLISH THAT THE APPELLEES WAIVED THEIR RIGHT TO DEFEND HUNTER'S MTR FOR THE FIRST TIME IN THIS APPEAL, HUNTER FURTHER REPLIES AS FOLLOWS:**

**FIRST FALSE AND FRAUDULENT POINT MADE IN APPEE BRIEF**

16. Page ii of Appee Brief falsely states that Appellant's Brief ("Appnt Brief") seeks mandamus relief; falsely implying that Hunter is somehow not entitled to mandamus relief in a direct appeal. However, TRAP 44.1 specifically permits mandamus relief: "If the error affects part of, but not all, the matter in controversy and that part is separable

without unfairness to the parties, the judgment must be reversed and <u>a new trial ordered</u> only as to the part affected by the error." (mandamus relief shown with double underline). TRAP 44.4 also specifically permits mandamus relief: "(b) Court of Appeals Direction if Error Remediable. If the circumstances described in (a) exist, <u>the court of appeals must direct the trial court to correct the error</u>. The court of appeals will then proceed as if the erroneous action or failure to act had not occurred."

17. The Appnt Brief asks that this Court "grant this petition". <u>See</u> Appnt Brief ¶ 33, request (1).

18. This court can grant this petition for appeal and direct the lower court to perform ministerial duties, as it did in an order this Court entered on January 21, 2015 ("January Order"). Also TRAP 43.2 (d) explicitly authorizes this Court to "remand the case for further proceedings" which constitutes mandamus relief.

19. This Court has already <u>sua sponte</u> granted Hunter mandamus relief in its January Order.

20. The Appee Brief erroneously relies upon _Pinnacle Gas Treating, Inc. v. Read_, 13 S.W.3d 126, 127 (Tex.App.–Waco 2000, no pet.) and falsely states that the court in _Pinnacle Gas Treating, Inc._ held that a party could not seek mandamus relief in a direct appeal. _See_ p. 9 of Appee Brief. The truth is that this _Pinnacle Pinnacle Gas Treating, Inc._ appeal was dismissed because the appeal was interlocutory. _See Pinnacle Gas Treating, Inc. v. Read_, 13 S.W.3d 126, 127 (Tex.App.–Waco 2000, no pet.). Further, the Appee Brief erroneously relies upon _Brown v. Burks_, 01-10-000219-cv, 2001 WL 2418475, at *2, n.1(Tex. App. – Houston [1st Dist.] May 25, 2011, no pet.) to falsely state that the _Brown v. Burks_ court could not consider an attempted appeal as a writ of mandamus. _See_ p. 9 of Appee Brief. The truth is that the _Brown v. Burks_ court denied the appeal because it was an unauthorized interlocutory appeal: it was an appeal of non-final order(s).

21. Therefore, it is obvious that the Appee Brief contains blatant and intentional false statements in

p. ii and p. 9 and in any other part that claims that this Court should not grant mandamus relief.

## SECOND FALSE AND FRAUDULENT POINT MADE IN APPEE BRIEF

22. The Appee Brief falsely claims that Hunter's NOA was untimely.

23. The Appellees waived any defense based on untimeliness of Hunter's NOA. The Appellees did not promptly assert the defense of untimeliness. The Appellees' only immediate objection to Hunter's NOA was a contest ("Contest") of Hunter's Motion IFP which Appellees filed erroneously with this court in about December 2014. (TRCP requires such a Contest to be filed in the TCTDC.) Waiver is an intentional relinquishment of right. See Palladian, 165 S.W.3d at 434; see also Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex.2003); Sun Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex.1987) which establish that the Appellees waived their right to assert the defense of untimeliness.

## THIRD FALSE AND FRAUDULENT POINT MADE IN THE APPEE BRIEF

24. Appee Brief contains a false statement on page 1 in which it states that Hunter "advances no argument nor provides any authority in support of her contention that such order should be reversed". <u>See</u> Appee Brief p. 1.

25. The Appnt Brief establishes that the TCTDC abandoned the U.S. Constitution Due Process Clause and state laws and refused to perform required ministerial duties in the underlying lawsuit. As a result, Hunter's underlying lawsuit did not move forward. Subsequently, the underlying court performed the discretionary ministerial duty of dismissing Hunter's lawsuit only because Hunter's lawsuit did not move forward (i.e. "want of prosecution"). These are reversible errors because without these errors, the final result of this lawsuit would be significantly different: it would not have been dismissed for want of prosecution. And if it was dismissed for want of prosecution; a hearing on Hunter's MTR would have resulted in the TCTDC reinstating Hunter's lawsuit.

26. Appnt Brief establishes on pages 8 and 9 that the underlying court refused to hold a hearing on Hunter's Motion To Reinstate ("MTR"); and such a hearing is required pursuant to TRCP 165a(3).

27. It is reversible error that the TCTDC, inter alia, failed to conduct the required hearing on Hunter's MTR.

**FOURTH FALSE AND FRAUDULENT POINT MADE IN THE APPEE BRIEF**

28. Page 2 of Appee Brief falsely states that "[t]his Court has previously heard and denied such requests for [mandamus] relief in Appellant's mandamus proceeding, In re Chase Carmen Hunter, No. 03-13-00468-CV".

29. This is a false statement for many reasons. This court's case 03-13-00468-CV was a petition for a writ of mandamus that was filed in about July 2013. This present case is a petition for appeal that was filed in about November 2014. The issues have changed from July 2013 to November 2014. The issues may look similar, and they may or may not be similar. But the

- 12 -

look of similarity does not establish that the requests for relief in this appeal are barred.

30. And even if such requests for relief were previously "heard and denied" in this court's case 03-13-00468-CV, the legal standards for a petition for a writ of mandamus (this court's case 03-13-00468-CV) and for a petition for appeal (this court's case 03-14-00737-CV) are not the same. As one example of the difference, a petition for a writ of mandamus seeks relief regarding required ministerial judicial duties; whereas a petition for appeal has a much broader scope of available relief. As another example, a petition for a writ of mandamus requires that the petitioner have no other remedy available; whereas, a petition for appeal is no so restricted. In fact, Hunter has a guaranteed right to file this petition for appeal. The same issues presented in such petition for a writ of mandamus may be presented again in a petition for appeal after an appealable order is entered.

31. The second paragraph on page 9 of Appee Brief, which carries over to page 10, is irrelevant to this petition for appeal. This is a petition of appeal of the TCTDC order dated August 25, 2014. And the issues regarding the TCTDC's Clerk refusal to perform ministerial duties is subordinate to the main issue which is the petition for appeal of the August Order. However, if this court grants this appeal and reverses the August Order, the TCTDC Clerk and TCTDC judges will likely continue to refuse to perform ministerial duties; and the underlying lawsuit will continue to stagnate absent the granting of mandamus relief. But first and foremost, this is a petition for appeal of the August Order. It is this court's sole discretion to grant mandamus relief. However, in the interest of judicial economy, if this court reverses the August Order and does not grant mandamus relief, Hunter will likely need to appeal a second subsequent TCTDC dismissal order which the TCTDC could enter a second time on the basis of "want of prosecution" arising only from the TCTDC and TCTDC

Clerk's failure to perform ministerial duties, and not due to any fault of Hunter's.

32. Morales' statement on page 9 of Appee Brief which states that "there is no evidence in the record that Appellant filed an actual petition for writ of mandamus against the clerk in the trial court which was not ruled on by the district court judge --- instead, she filed a motion seeking such relief..." is without logic. See Appee Brief p. 9. On page 3 of the Appee Brief, Morales states that Hunter "filed a document entitled, 'Verified Motion Directly Filed With Judge John K. Dietz for Writ of Mandamus And Prohibition Directed To the Honorable Amalia Rodriguez-Mendoza, Clerk of the District Court of Travis County Texas'. CR83-97" It is well established that a pleading filed with a court is classified based on the relief requested. Therefore, a reasonable person would conclude that a "motion filed [directly with the judge] seeking such [mandamus] relief" is a "petition for writ of mandamus". Further, there may not always be a record

in the TCTDC's "clerk's record" of motions and petitions filed directly with Judge Dietz because such motions and petitions are not filed with the TCTDC Clerk but are filed directly with the judge and a judge may not accept such documents for filing:

> "When a district clerk refuses to accept a pleading presented for filing, the party presenting the document may seek relief by filing an application for writ of mandamus in the district court. TEX. GOV'T CODE § 24.011. However, that is not likely to help the relator here. If the district clerk refused to file a writ of mandamus against the prison official, the district clerk is not likely to accept a writ of mandamus filed against her office. When a district clerk refuses to accept a pleading for filing, the party should attempt to file the pleading directly with the district judge, explaining in a verified motion that the clerk refused to accept the pleading for filing. TEX.R. CIV. P. 74. Should the district judge refuse to accept the pleading for filing, this Court would have jurisdiction under our mandamus power to direct the district judge to file the pleading." see In re Bernard, 993 S.W.2d 453, 454-544 (Tex. App.-Houston [1st Dist.] 1999, orig. proceeding)(O'Connor, J., concurring.)

33. Take notice that In re Bernard uses the phrases "application for writ of mandamus", "refused to file a writ of mandamus", and "verified motion that the clerk refused to accept the pleading for filing" and does not indicate that mandamus relief directed to

- 16 -

the TCTDC Clerk can only be considered by the TCTDC if Hunter's document sent directly to Judge Dietz used the specific phrase, "petition for writ of mandamus". see In re Bernard, 993 S.W.2d 453, 454-544 (Tex. App.-Houston [1st Dist.] 1999, orig. proceeding)(O'Connor, J., concurring.)

34. Because the record shows that Judge Dietz did not inform Hunter of whether or not he "accepted [her] pleading for filing", it is possible that Hunter's motions and petitions filed directly with Judge Dietz were not accepted for filing.

35. But the record proves that Judge Dietz ignored Hunter's request for mandamus relief directed to the TCTDC Clerk (regardless of whether such requests were classified as a motion or a petition). And it is irrelevant if Hunter's document sent directly to Judge Dietz was titled "petition for writ of mandamus" (as Morales contends was required) or titled "application for writ of mandamus", "writ of mandamus", or "verified motion" which are phrases established in In re Bernard. see In re Bernard, 993

S.W.2d 453, 454-544 (Tex. App.-Houston [1st Dist.] 1999, orig. proceeding)(O'Connor, J., concurring.)

36. Further, whether or not "there is [no] evidence in the record that Appellant filed an actual petition for writ of mandamus against the clerk in the trial court which was not ruled on by the district court judge --- instead, she filed a motion seeking such relief..." is irrelevant to Hunter's Appeal of the August Order because the August Order is appealable and is being appealed. And the issues regarding "the petition for writ of mandamus against the clerk" are not the direct subject of the August Order. The fact that the TCTDC refused to hold a hearing required pursuant to 165a(3) is the direct subject of the August Order.

37. Further, the TCTDC record proves that Hunter repeatedly filed documents in which she attempted to move her lawsuit forward and that she was blocked by the Clerk of the TCTDC who refused to perform ministerial duties. There is no factual basis to sua

<u>sponte</u> dismiss Hunter's lawsuit for "want of prosecution".

38. In addition, Morales makes the ridiculous statement beginning on page 9 and continuing on page 10 of Appee Brief that "nor is there any evidence that Appellant complied with the requirements of the Travis County Local Rules to assign her motion to Judge Dietz or set such the matter for a hearing so that it might be ruled on." This statement is ridiculous because Travis County Civ. Dist. Ct. Loc. Rule ("TCTDC Loc. Rule") 2.6 sets forth the procedure for assigning a specific judge to a specific case. It does not establish a procedure for seeking relief directly from a judge when the Clerk refuses to perform ministerial duties. TRCP 74 states that "[w]hen a district clerk refuses to accept a pleading for filing, the party should attempt to file the pleading directly with the district judge, explaining in a verified motion that the clerk refused to accept the pleading for filing." TRCP 74 does not specify which "district judge" the party must attempt to file

- 19 -

said pleading. Any judge in the TCTDC, upon receipt of receiving a request for relief under such circumstances has no basis upon which he can ignore having received said request for relief.

39. In addition, TCTDC Loc. Rules 2.1, 2.2, 2.4, and 2.6, do not establish requirements; they establish procedures; TCTDC Loc. Rule 2.2 establishes that a party can set a matter for a hearing online using civilcourtsonline.org but this online service is only available to attorneys and Hunter is acting <u>pro</u> <u>se</u> and is not an attorney; and TCTDC Loc. Rule 2.2 establishes that a party can set a matter for a hearing by making an oral request. The facts show that that TCTDC Clerk would not respond to Hunter's faxes sent, would not answer the telephone when Hunter called, and would not return Hunter's telephone messages. <u>See</u> Appnt Brief p. 13, ¶ 29.

40. Finally, the Appellant's Appendix page 109 shows that Hunter made a written request directly with Judge Dietz that he hold a hearing on her MTR.

**<u>FIFTH FALSE AND FRAUDULENT POINT MADE IN APPEE BRIEF</u>**

41. On pages 3 and 4 of the Appee Brief, Morales falsely manipulates the issues. See Appee Brief pp 3-4. Morales claims that the TCTDC Clerk sent Hunter a request ("Request") for a "copy of the petition for each party to be attached to the citation and the name and address of each party whom Appellant wished to have served..." and that Hunter characterized this Request as the TCDC Clerk's manipulation of the record and "to cause confusion." See Appee Brief pp 3-4. Morales manipulates the facts to paint Hunter in a false light by falsely stating that "[n]o response to this letter [request] or any completed issuance request form appears in the record CR1-262; SuppCR1-10." Morales falsely twists the facts to make it look like the only reason why the TCTDC Clerk did not issue citations is because she did not receive a "response to this letter or any completed issuance request form".

42. The TCTDC Clerk was required to provide Hunter with services without first requiring Hunter's response to this Request.

- 21 -

43. The TCTDC's Request falsely implies that the TCTDC did not have the full names and addresses of the Defendants and did not have copies of the Pet DJ to attach to the citations. The Pet DJ shows the full name and address of the Defendants to be served on pages 2 and 3. See Appnt Appendix pp. 8 and 9 which show Pet DJ, p 2, ¶ 2; and p. 3 ¶ 7. The Defendants' full names are shown on the first page of the Pet DJ. See Appnt Appendix p. 7. In addition, the Defendants to be served are public officials of Texas, who are located in Travis County, and their names and address are public information. Therefore, the TCTDC Clerk already knew the Defendants' full names and addresses. Therefore, there was no reason to request the full name and address of the Defendants to be served. In addition, neither the TRCP nor the TCTDC Loc. Rules a) require the plaintiff to provide the TCTDC Clerk with more than one original document, or b) authorize the TCTDC Clerk to require an indigent party to provide copies of the original complaint. Notwithstanding, Hunter included two copies of the Pet DJ and two

- 22 -

copies of the Motion IFP in the same mailing envelope when Hunter filed her original Pet DJ and Motion IFP with the TCTDC Clerk.  Therefore, there was no reason to request copies of Hunter.  Further, the TCTDC Clerk had sent Hunter many emails telling Hunter that she would not issue citations only because Hunter had not paid the TCTDC Clerk's filing fee.  See Appnt's Appendix p. 102 as one example. The TCTDC Clerk falsely inserted this Request into the record to manipulate the facts. The fact is that the TCTDC Clerk had everything she needed to issue citations and refused to issue citations only because Hunter had not paid the TCTDC Clerk's filing fee. Page 102 of the Appnt Appendix, which is dated June 25, 2013, does not ask Hunter to provide the full names and addresses of the parties to be served and does not ask Hunter to provide additional copies.

**IRRELEVANT WORDS IN THE APPEE BRIEF**

44. From the second paragraph of page 4 to the middle of page 5 of Appee Brief: these words are irrelevant to this appeal. They seem to provide only procedural

history of this court's case 03-13-00468-CV. Hunter does not admit or deny the accuracy of these words because the petition for a writ of mandamus in TTCA case 03-13-00468-CV is not relevant to this direct appeal.

45. The second paragraph on page 5 of Appellee's Brief is irrelevant to this appeal. Hunter does not admit or deny the accuracy of these words because they are not relevant to this direct appeal.

**SIXTH FALSE AND FRAUDULENT POINT MADE IN THE APPEE BRIEF**

46. The first paragraph of page 6 of Appee Brief contains a false statement. The Appellee states: "[o]n September 26, 2014, thirty-two days after the dismissal of the case, Appellant filed a document entitled..." The use of the word "filed" is false. Pursuant to TRCP 21a(b)(1), a document is filed when it is deposited in the mail. Hunter did not file said document on September 26, 2014. Instead, said document was marked by the TCTDC Clerk as having been received on September 26, 2014.

47. The second paragraph of page 6 of Appee Brief falsely states, "[i]f the motion had been timely filed on September 24..." said motion to reinstate ("MTR") was timely filed. This is a false statement because the "motion" (i.e. MTR) was timely filed. The notice of dismissal was sent to Hunter by mail. Pursuant to TRCP 4 and 21a(c), any deadline to perform an action is extended by three days when notice of the chance to perform such action is made my mail. Therefore, Hunter's MTR was timely if deposited in the mail no later than 33 days after August 25, 2014. Therefore, if Hunter deposited her MTR in the mail on or before September 27, 2014, her MTR was timely filed pursuant to TRCP 4, 21a(c), and 21a(b)(1). Therefore, if the TCTDC Clerk received Hunter's MTR on September 26, 2014, it was received in advance of the filing deadline and was timely filed. Because Hunter's MTR was timely filed, then according to the Appee Brief, footnote 10, Hunter's Notice of Appeal ("NOA") was timely filed.

**SEVENTH FALSE AND FRAUDULENT POINT MADE IN APPEE BRIEF**

48. The Appellees' footnote 8 contains manipulations of the facts to assert that Hunter has lied about the date of mailing of her MTR. This footnote claims that "[n]o such records or any other proof of date of mailing appear in the record of this case." However, Hunter does not need to provide any proof of date of mailing because Hunter's MTR was timely filed when she deposited her MTR in the mail on or before September 27, 2014, pursuant to TRCP 4, 21a(c), and 21a(b)(1). And we know that Hunter deposited her MTR in the mail on or before September 27, 2014, because the TCTDC Clerk indicated receiving Hunter's MTR on September 26, 2014.

**EIGHTH FALSE AND FRAUDULENT POINT MADE IN APPEE BRIEF**

49. The Appellees' footnote 9 contains assertions that Hunter has lied about sending the letter to Judge Dietz that is shown in Hunter's Appendix p. 109 ("Dietz Letter"). The Appellee implies that Hunter must be lying about having sent this Dietz Letter on the basis that this Dietz Letter does not appear in the "clerk's record". Hunter's initial brief and

appendix were drafted by Hunter and certified under penalty of perjury by Hunter. Calling Hunter a liar does not make Hunter a liar. Also, the Appee Brief admits that the Appellees believe that the TCTDC Clerk made an error with the first version of the "clerk's record" provided in this Appeal ("First Clerk's Record"). The Appee Brief states that the Appellees believe that the TCTDC Clerk omitted parts of the "clerk's record" from the First Clerk's Record. See Appee Brief, Footnotes 5 and 7. Obviously, the First Clerk's Record did not provide this court with all the documents in the "clerk's record": the TCTDC Clerk provided a supplemental "clerk's record" in this Appeal, upon the Appellees' request, and such supplement included documents specifically requested by the Appellees that pre-dated the First Clerk's Record. The Appee Brief admits that it believes that the TCTDC Clerk made errors with the First Clerk's Record but also relies upon the admittedly erroneous First Clerk's Record to assert that Hunter lied about sending the Dietz Letter.

50. Even if Hunter lied about sending the Dietz Letter, (but Hunter certifies that she did not lie about this or anything else); Judge Dietz was required by statute (TRCP 165a(3)) to hold a hearing on Hunter's MTR. There is no statute or rule that required Hunter to perform any task to prompt Judge Dietz to perform a required ministerial duty.

51. This court's record proves that the TCTDC contacted Hunter in January 2015 by telephone to schedule a hearing that this court directed it to hold and that it scheduled said hearing without first giving Hunter an opportunity to participate in such scheduling. See motions filed by Hunter with this Court on February 3, 4, and 5th, 2015, in which she asks for this Court's assistance with scheduling said hearing. This proves that the TCTDC is capable of contacting a party to schedule a hearing and is capable of scheduling a required hearing without first requiring any specific action by the movant. TRCP 165a(3) does not state that the TCTDC was required to hold a

hearing on Hunter's MTR only if the Hunter took specific action.

52. In addition, the Dietz Letter (Appnt Appendix p. 109)(and attachments) were mailed via Certified, Restricted Delivery, Return Receipt Requested, first-class mail (see below) and faxed directly to Judge Dietz as shown on the Dietz Letter. These documents would appear in the "clerk's record" only if Judge Dietz gave them to the TCTDC Clerk to file.

53. There are many reasons why the Dietz Letter may not be included in the "clerk's record". There is no basis to call Hunter a liar.

**NINTH FALSE AND FRAUDULENT POINT MADE IN APPEE BRIEF**

54. The top of page 7 of Appee Brief contains false statements. The Appellant did not file a NOA on December 1, 2014. Instead, the TCTDC Clerk indicated that she received Hunter's NOA on December 1, 2014. Pursuant to TRCP 4, 21a(c), and 21a(b)(1); the date of filing is the date the item is deposited in the mail. Please, take judicial notice of the Texas Supreme Court calendar for November 27th and November 28th, 2014, which were a Thursday and Friday. The TCTDC was closed from November 27th to November 30th, 2014. If Hunter mailed her NOA on November 24, 2014, and if the TCTDC Clerk received the NOA on December 1, 2014, the number of days during which the TCTDC was open from November 24, 2014, to December 1, 2014, not including the date of mailing, and including December 1, 2014, was three days. The NOA was apparently entered by the TCTDC Clerk only three business days after Hunter states that she mailed it. Also, conspicuously and suspiciously, the TCTDC Clerk did not make part of the "clerk's record" the mailing

envelopes she received from Hunter. Obviously, the TCTDC Clerk preserved only parts of the record and/or provided this court with only parts of the record.

55. Hunter also filed her NOA with this court electronically on November 24, 2014. Therefore, pursuant to TRAP 25.1(a), Hunter's NOA was filed with the TCTDC on November 24, 2014. The Appellee admits that Hunter's NOA was timely filed on November 24, 2014. See Appee Brief p. 7, Footnote 10. The Appellees' assertion that Hunter's NOA was untimely filed on December 1, 2014, with the TCTDC (see Appee Brief p. 7, top) contradicts Appellees' assertion that Hunter's NOA was timely filed on November 24, 2014. See Appee Brief p. 7, Footnote 10.

56. Obviously, the Appee Brief takes this court on a futile circular journey of contradiction and confusion with the sole purpose of deceiving this court.

**TENTH FALSE AND FRAUDULENT POINT MADE IN APPEE BRIEF**

57. The Appee Brief implies that Hunter agreed to pay the TCTDC Clerk's filing fee. See Appee Brief p 3,

footnote 3. And the basis for this false assertion is the existence of a document, apparently signed by someone who does not provide her last name, who states that Hunter agreed by telephone to pay the TCTDC Clerk's filing fee.  See Appee Brief p. 3, footnote 3 and Appnt Appendix p. 128.

58. Let's first look at the facts. Appnt Appendix p. 128 is dated June 19, 2013. It states that Cristina M. had a telephone conversation with Hunter on June 7, 2013, during which Hunter agreed to pay the TCTDC Clerk's filing fee.  But this Appendix p. 128 is fraudulent. Appnt Appendix p. 102 shows an email Hunter received from Brooke Daniel who worked at the TCTDC  Clerk's office that is dated June 25, 2013. It states that Hunter's "Affidavit of Inability to pay costs was not approved."  The Appnt Appendix pp. 98–99 shows a two-page fax dated June 16, 2013, which Hunter sent to every court district in TCTDC in which Hunter states that she believes that her Pet DJ and motions have been lost and not docketed; and Hunter asks every district to "look for my civil petition

and three motions and docket them expeditiously." The electronic correspondence and facsimiles to and from the TCTDC Clerk establish that the Appnt Appendix p. 128 is false and fraudulent.

59.     Hunter has always stated that Appnt Appendix p. 128 which states that Hunter agreed by telephone to pay the TCTDC Clerk's filing fee contains false statements and is fraudulent.  Hunter never agreed on June 7, 2013, (or any other date) to pay the TCTDC Clerk's filing fee. Hunter filed a Motion IFP. Hunter filed no documents indicating that she agreed to pay the TCTDC Clerk's filing fee.  The TCTDC Clerk's record shows no instances in which Hunter sent payment to the TCTDC Clerk.  An unverified statement made by someone other than Hunter (Cristina M.) which states that Hunter agreed to pay the TCTDC Clerk's filing fee has no evidentiary value.

60. Further, the record in TTCA case 03-13-00468-CV shows that the clerk of this court sent a letter dated September 6, 2013, to the TCTDC Clerk requesting that the "District Clerk's Office" file a

response to Hunter's petition for a writ of mandamus. See Exhibit A. The "District Clerk's Office" did not file a response. Please, take judicial notice. Therefore, the TCTDC Clerk's Office knowingly defaulted on Hunter's petition for a writ of mandamus and therefore admitted that the TCTDC Clerk violated, among other things, TRCP 145a, and that Hunter did not agree by telephone to pay the TCTDC Clerk's filing fee.

## ELEVENTH FALSE AND FRAUDULENT POINT MADE IN APPEE BRIEF

61. Page ii falsely states that Hunter waived complaints on appeal due to inadequate briefing. It is not clear exactly what the Appellees classify as inadequate briefing. The Appnt Brief follows the format dictated by the TRAP and clearly sets forth violations of, inter alia, more than one significant TRCP and clearly establishes reversible error.

62. Page ii falsely states that Hunter made no showing of reversible error. The fact that the TCTDC failed to conduct the required hearing pursuant to TRCP 165a(3) is just one specific reversible error.

Perhaps the Appnt Brief did not explicitly refer to this as "reversible error". But a "reversible error" is a "reversible error" regardless of what label it is given. Names of things do not affect what they really are. <u>See</u> <u>e.g.</u> "A rose by any other name would smell as sweet."  William Shakespeare's play <u>Romeo and Juliet</u>; "When I see a bird that walks like a duck and swims like a duck and quacks like a duck, I call that bird a duck." – James Whitcomb Riley, American poet, writer, and best-selling author.

## TWELFTH FALSE AND FRAUDULENT POINT MADE IN APPEE BRIEF

63. The bottom of page 13 of Appee Brief contains false and illogical statements and argument: "...are premised on Appellant's erroneous assertion that she is indigent; an assertion which has been found to be false, as evidence by the trial court's finding of February 19, 2015. SuppCR3-4"  First, the trial court did not find such an assertion to be "false". Please, take judicial notice.  Second, Hunter filed her Motion IFP in June 2013. The TCTDC Clerk was required pursuant to TRCP 145a to issue citations in 2013.  No

order entered by the TCTDC dated in February 2015 is relevant to the TCTDC Clerk's failure to issue citations in June 2013. For one reason, TRCP 145(d) requires either the TCTDC Clerk or the adverse party to contest Hunter's Motion IFP in writing and requires that a hearing be held on the contest. And no contest was filed at any time in the TCTDC. The Appellees waived their right to assert that Hunter is not indigent. Waiver is an intentional relinquishment of right. See Palladian, 165 S.W.3d at 434; see also Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex.2003); Sun Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex.1987) which establish that the Appellees waived their right to assert that Hunter is not indigent.

64. Also, the statement in the Appee Brief at the top of page 3 is false. It states, "A notation appears on the copy of the motion in the record, which reads, 'Approved with payment plan. 6/18/13.' CR71" (footnote reference omitted) It is false for many reasons. One main reason it is false is that this

statement seems to falsely imply that is relevant to this appeal whether or not the TCTDC Clerk has authority to "approve" a Motion IFP. This is an appeal of the August Order, not of the TCTDC Clerk's refusal to perform ministerial duties. Also, the Appee Brief is attempting to use this appeal to assert the defense it would have asserted during a hearing on Hunter's MTR. But the Appellees knowingly refused to defend Hunter's MTR. Waiver is an intentional relinquishment of right. See Palladian, 165 S.W.3d at 434; see also Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex.2003); Sun Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex.1987) which establish that the Appellees waived their right to assert the defense for the first time in this appeal that they were permitted to assert in the TCTDC.

## SUMMARY

65. The Appee Brief is a compilation of lies and false argument. Lying and making false argument are not legal strategies. They are crimes (known as perjury) and violations of Texas Disciplinary Rules of

- 37 -

Professional Conduct, including but not limited to Rule 3.03 "Candor Toward the Tribunal".

**PRAYER.**

66. Hunter respectfully requests that this Court take jurisdiction of this case, and that upon reviewing this matter: (1) grant this Petition, (2) reverse the Order of Dismissal, (3) direct the TCTDC to direct the Clerk to (a) issue citations in TCDC case D-1-GN-13001957, (b) cause service of process upon the defendants in TCDC case D-1-GN-13001957, (c) provide Hunter with all customary services provided any other party without charge, (d) provide Hunter with free access to http://www.idocket.com so that Hunter can view her case progress, or in the alternative, send Hunter a weekly statement by facsimile at 703-997-5999 that accurately reflects the activity of any cause pending in which Hunter is a party, (4) direct the TCTDC to enter an order that transfers this lawsuit to this Court for adjudication since the TCTDC has refused to comply with the United States Constitution and the

aforementioned TRCP's and has refused to perform its ministerial duties to adjudicate this lawsuit since June 2013, (5) award Hunter her reasonable attorney's fees and costs, and (6) award Hunter such further relief to which she may be entitled.

Respectfully Submitted,

/s/ Chase Carmen Hunter

Chase Carmen Hunter
Appellant, pro se
340 S. Walnut Ave. #9039 :: Walnut, CA 91789
Tel: 707-706-3647 :: Fax: 703-997-5999
Email: Chase_Hunter@yahoo.com

## **CERTIFICATION**

I, Chase Carmen Hunter, certify that I have reviewed this Reply and conclude that every factual statement in the Reply is supported by competent evidence included in the appendix or record.

_____
Chase Carmen Hunter

## **CERTIFICATION**

I, Chase Carmen Hunter, swear under penalty of perjury that the document shown in the one exhibit is true and accurate.

_____
Chase Carmen Hunter

## CERTIFICATION IN COMPLIANCE WITH TEX. R. APP. P 9.4(i)(2)(B) and 9.4(i)(3)

I, Chase Carmen Hunter, certify that this Reply contains 6,829 words and 37 pages.

_____
Chase Carmen Hunter

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Reply was served upon the parties shown below as indicated:

Cynthia A. Morales, Assistant Attorney General
By Efile on April 9, 2015
Cynthia.Morales@texasattorneygeneral.gov
Facsimile: (512) 477-2348

_____
Chase Carmen Hunter



# COURT OF APPEALS

## THIRD DISTRICT OF TEXAS

P.O. BOX 12547, AUSTIN, TEXAS 78711-2547
www.3rdcoa.courts.state.tx.us
(512) 463-1733

J. WOODFIN JONES, CHIEF JUSTICE
DAVID PURYEAR, JUSTICE
BOB PEMBERTON, JUSTICE
JEFF L. ROSE, JUSTICE
MELISSA GOODWIN, JUSTICE
SCOTT K. FIELD, JUSTICE

JEFFREY D. KYLE, CLERK

September 6, 2013

Ms. Sara Shiplet Waitt
Tx Dept Of Insurance
P.O. Box 149104
Austin, TX 78714-9104
* DELIVERED VIA E-MAIL *

The Honorable Amalia Rodriguez-Mendoza
Civil District Clerk
Travis County Courthouse
P. O. Box 1748
Austin, TX 78767
* DELIVERED VIA E-MAIL *

RE:    Court of Appeals Number:    03-13-00468-CV
         Trial Court Case Number:    D-1-GN-13-001957

Style:    In re Chase Carmen Hunter
        v.

Dear Counsel and Honorable Amalia Rodriguez-Mendoza:

      The Court requests that real party in interest and the District Clerk's Office file a response to relator's petition for writ of mandamus that was filed in this court **July 15, 2013**. Please file your response with the Clerk of this Court on or before **Friday, September 20, 2013**.

          Very truly yours,

          JEFFREY D. KYLE, CLERK

          BY: *Amy Strother*
            Amy Strother, Deputy Clerk

cc:    Ms. Chase Carmen Hunter

# EXHIBIT A